IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TINA L. PENNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-525-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Tina L. Penny requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 14, 1978, and was thirty-five years old at the time of the administrative hearing (Tr. 61). She completed twelfth grade, and has worked as a cashier II, certified nurse's aide, hand packer, stacker, and jailer (Tr. 82, 234). The claimant alleges inability to work since January 14, 2009, due to bipolar disorder, sleep disorder, diabetes, legs swelling, and back pain (Tr. 233).

## Procedural History

On April 29, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Edmund C. Werre conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 23, 2013 (Tr. 10-20). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with no more than occasional lifting up to twenty pounds, no more than frequent lifting or carrying up to ten pounds, standing/walking six hours out of an eight-hour workday, and sitting six hours out of an

eight-hour workday, but with the additional limitations of understanding, remembering, and carrying out simple and some complex instructions and the ability to relate and interact with coworkers and supervisors on a work-related basis only with no or minimal interaction with the general public (Tr. 14). Additionally, he determined that she could adapt to a work situation with these limitations/restrictions, and that her medications would not preclude her from remaining reasonably alert to perform required functions presented in a work setting (Tr. 14). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a stacker on a function-by-function basis as she performed it (Tr. 18-19). Alternatively, he determined that there was other work that she could perform, *i. e.*, small product assembler, housekeeper motel, clerical mailer, and optical goods assembler (Tr. 19-20).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly account for her obesity; (ii) by failing to properly assess the medical evidence in the record, particularly as it related to her mental impairments; and (iii) by failing to properly evaluate her credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's severe mental impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, scoliosis, diabetes mellitus, peripheral neuropathy, obesity, bipolar disorder, intermittent explosive disorder, antisocial personality disorder, and polysubstance abuse history (Tr. 12). The medical evidence related to her mental impairments reveals that the

claimant was largely treated with medication management for depression and bipolar disorder through the Cherokee Nation Health Center as far back as 2007 (Tr. 330-429, 518-661).

On November 14, 2009, Beth Jeffries, Ph.D., conducted a mental status examination (Tr. 430). Dr. Jeffries noted the claimant reported a history of bipolar disorder and possible PTSD, but stated that she did not endorse symptoms consistent with PTSD (Tr. 430). Upon exam, her thought process was logical and goal directed in general, she was able to follow simple instructions, and appeared to have an IQ in the average range, as well as able to complete most tasks in the area of concentration and memory (Tr. 431). Dr. Jeffries assessed the claimant with bipolar disorder on Axis I, and recommended that the claimant see a psychiatrist or counselor, noting the claimant appeared to meet the criteria for bipolar disorder (Tr. 432). Additionally, she stated that the claimant's symptoms appeared to occasionally interfere with her ability to perform occupationally at times, and that with continued medication compliance with a therapist she could have a good prognosis, but that at the time of the evaluation her symptoms were likely to interfere with her socially and occupationally (Tr. 432).

On January 4, 2010, state reviewing physician Laura Lochner, Ph.D., completed a PRTF and mental RFC assessment of the claimant. In the mental RFC evaluation, Dr. Lochner indicated the claimant was moderately limited in the areas of maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers

or peers without distracting them or exhibiting behavioral extremes (Tr. 475-476). Additionally, she indicated that the claimant was markedly limited in the ability to interact appropriately with the general public (Tr. 476). She then stated that the claimant could understand and carry out simple and complex tasks; had some problems getting along with others, so she should have no public contact; would work better in an environment with less direct supervision, but can generally get along with supervisors and peers on a superficial work basis; and could adapt to a work situation (Tr. 477).

On June 1, 2011, Gary Lindsay, Ph.D., reviewing the claimant's records and completed a Psychiatric Review Technique Form in which he indicated that he believed her mental impairments were non-severe (Tr. 676-690).

On September 16, 2011, Patrick Turnock, Ph.D., completed a second mental status examination (Tr. 718). He noted that her thought process was tangential and she had legitimate paranoia and a blunted affect, with a mood that was steady, depressed, and hostile at times (Tr. 718-719). He also estimated she had an average IQ, but noted that her long-term memory, short-term memory, and concentration all appeared to be mildly impaired, as well as her judgment and insight (Tr. 719). He assessed her with bipolar disorder I on Axis I, along with an Axis II assessment of antisocial personality disorder and borderline personality disorder (Tr. 719). He concluded by stating that she had an "overall poor adjustment to stress" and recommended psychiatric therapy as well as additional testing to help with medication adjustment that might also alleviate her symptoms (Tr. 719). He stated that her ability to deal with the public, supervisors, and co-workers is impaired due to antisocial personality disorder, but that she had the ability

to understand, remember, and carry out simple and complex instructions (Tr. 719). Finally, he stated that she was not capable of managing her own money and would benefit from an executor (Tr. 719).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the medical evidence. As to her mental impairments, he made no mention of Dr. Jeffries' 2009 assessment, then summarized Dr. Turnock's consultative report without analysis. He then gave moderate weight to Dr. Lindsay's reviewing opinion, but acknowledged Dr. Turnock's statements regarding "some mild impairment in the claimant's memory and concentration as well as the ability to get along with others" (Tr. 17). He also noted a moderate limitation in the claimant's social functioning, which he stated he included in the claimant's RFC at step five (Tr. 17). He then determined the claimant was not credible, and proceeded to find her not disabled (Tr. 18-20).

The claimant argues that the ALJ erred in his analysis with regard to Dr. Turnock's mental status examination, and the Court agrees and reverses on this basis. As part of this discussion, the Court points out the ALJ's additional error with regard to his lack of analysis of Dr. Jeffries' opinion (which lends support to the argument for reversal), but notes that the basis for reversal here lies in the ALJ's error with regard to Dr. Turnock's opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."

*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Turnock's report, but entirely ignored Dr. Jeffries' report from 2009. Furthermore, he did not provide *any analysis* of either examiner's findings and prognoses. This was especially important to do with regard to Dr. Turnock's report, as argued by the claimant, because he expressed serious concerns about her ability to adjust to stress and her ability to work with supervisors, coworkers, and the public. Additionally, both examiners indicated that the claimant needed psychiatric treatment and medication management, and Dr. Jeffries noted that the claimant's ability to adjust to an occupational setting was impaired. This was a significant omission in that it calls into question the claimant's ability to perform in a work environment due to her poor reaction to stress as well as her inability to work with others. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ failed to address any of this in his summary, much less provide an analysis of these findings. *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). The ALJ also neglected to mention the fact that both mental health professionals who evaluated the claimant expressed concerns as to her ability to adjust to a work environment in light of her mental impairments, *i. e.*, he ignored the consistencies of opinions regarding the limitations of the claimant in relation to her mental impairments.

Because the ALJ failed to discuss evidence that was inconsistent with his RFC determination, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**